UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROSA LEE KLANESKI, as Assignee of
Farmington Auto Park, LLC, as Assignee of
Gora,
    *Plaintiff*,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE CO.; ROBERT FULGINITI;
and KELLY TIERNEY,
    *Defendants*.

No. 3:22-cv-1458 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

Rosa Lee Klaneski ("Plaintiff") has sued State Farm Mutual Automobile Insurance Company ("State Farm"), Robert Fulginiti, and Kelly Tierney (collectively, "Defendants"), alleging that Defendants unreasonably delayed their resolution of a claim involving an automobile accident and failed to pay the full amount owed under an automobile insurance policy. *See* Compl., ECF No. 1. The policy, which was held by David Gora, covered a 2013 Honda Civic owned by Halina Gora. *See id.* at 2. The Goras later assigned their rights under the policy to Farmington Auto Park, LLC, which in turn assigned these rights to Ms. Klaneski. *See id.* at 5. Ms. Klaneski now asserts claims under the Federal Trade Commission Act ("FTCA"), the federal mail and wire fraud statutes, the Connecticut Unfair Insurance Practices Act ("CUIPA"), the Connecticut Unfair Trade Practices Act ("CUTPA"), state insurance regulations, and state common law. *See id.* at 4–10.

Defendants have filed a motion to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim. Mot. to Dismiss, ECF No. 13 ("Mot.").

For the following reasons, Defendants' motion to dismiss is **GRANTED**.

Ms. Klaneski's claims under federal law are **DISMISSED with prejudice** for failure to state a claim.

Because the federal claims are dismissed and the Court does not have diversity jurisdiction over this action, the Court declines to exercise supplemental jurisdiction over Ms. Klaneski's state law claims. These claims are **DISMISSED without prejudice** to refiling in state court.

If Ms. Klaneski believes that the jurisdictional defects identified in this Ruling and Order can be cured, she must seek leave to file an Amended Complaint by **August 4, 2023**, or this action will be dismissed with prejudice.

I.   FACTUAL AND PROCEDURAL BACKGROUND

  A.  Factual Allegations

On or about June 1, 2022, the Goras' vehicle was allegedly involved in a serious accident. Compl. at 2. As a result, the vehicle was allegedly towed to Farmington Auto Park to await an appraisal of whether the vehicle could be repaired or would be deemed a total loss. *Id.*

After the accident, Mr. Gora allegedly filed a claim under his State Farm policy. *Id.* at 2–3. State Farm allegedly instructed Mr. Gora to take photos of the vehicle on his cell phone and send them to the insurer for appraisal. *Id.* at 3. Although Mr. Gora allegedly requested that State Farm send an appraiser in person, State Farm allegedly did not do so. *Id.* Based on the photos submitted by Mr. Gora, State Farm appraiser Robert Fulginiti allegedly assessed that the vehicle could be repaired for $8,007.71 and submitted this estimate to Farmington Auto Park. *Id.*

Farmington Auto Park allegedly disputed this appraisal, based in part on Mr. Fulginiti's failure to include the cost of repairing the vehicle's front end. *Id.* Farmington Auto Park allegedly requested a supplemental appraisal and advised State Farm that the total cost to repair

the vehicle would exceed Mr. Fulginiti's estimate by at least $5,000. *Id.* at 4. According to the Complaint, State Farm then sent Mr. Tierney to complete a supplemental appraisal in person. *Id.* Based on this new appraisal, State Farm concluded that the vehicle was a total loss. *Id.*

After State Farm deemed the vehicle a total loss, Farmington Auto Park allegedly presented State Farm with an invoice for $10,152.17. *Id.* State Farm allegedly issued a partial payment of $2,478.80, leaving an outstanding balance of $7,673.37. *Id.*

According to the Complaint, State Farm's inaccurate initial estimate and its initial failure to perform an in-person appraisal caused the Goras' vehicle to sit idle and damaged for a longer period than necessary. *Id.* During this period, the vehicle accrued daily storage charges and occupied space at Farmington Auto Park. *Id.*

Ms. Klaneski also alleges that Farmington Auto Park repeatedly contacted State Farm regarding the extent of damage to the vehicle, the accruing storage costs, and the unpaid claim, and that State Farm unreasonably took two months to complete the claim. *Id.*

### B. Procedural History

On November 14, 2022, Ms. Klaneski filed her Complaint in the United States District Court for the District of Connecticut. Compl.

On January 19, 2023, Defendants filed their motion to dismiss Ms. Klaneski's Complaint. Mot.; Defs.' Mem. in Supp. of Mot. to Dismiss, ECF No. 13-1 ("Mem.").

On February 6, 2023, Ms. Klaneski filed her opposition to Defendants' motion to dismiss. Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss, ECF No. 16 ("Opp'n").

On February 10, 2023, the parties filed their Rule 26(f) report. Rule 26(f) Report, ECF No. 17.

On February 13, 2023, the Court issued a scheduling order. Scheduling Order, ECF No. 18.

On February 21, 2023, Defendants filed a reply in support of their motion to dismiss. Defs.' Reply to Pl.'s Obj. to Mot. to Dismiss, ECF No. 19 ("Reply").

On April 21, 2023, the Court granted Defendants' motion to stay discovery pending the resolution of Defendants' motion to dismiss. Order, ECF No. 24.

## II.     STANDARD OF REVIEW

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *Id.*

"When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet*, 235 F.3d at 83). The Court may also, however, resolve disputed jurisdictional fact issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

### B. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### III. DISCUSSION

The federal district courts are courts of limited jurisdiction. *See Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000) ("It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction."). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "Unlike failure of personal jurisdiction, failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lussier*, 211 F.3d at 700–01 (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).

In her Complaint, Ms. Klaneski asserts that the Court has federal question jurisdiction over this action. *See* Compl. at 2. Defendants, however, argue in their motion to dismiss that the federal statutes under which Ms. Klaneski asserts claims do not provide for private rights of

6

action. *See* Mem. at 16–17.[1] Thus, the insurer contends, this Court lacks subject matter jurisdiction over Ms. Klaneski's claims. *Id.* Ms. Klaneski argues in response that, even if federal question jurisdiction does not exist, the Court should allow her to amend her Complaint to assert diversity jurisdiction. *See* Opp'n at 5.

The Court will address each potential basis for subject matter jurisdiction in turn.

### A. Federal Question Jurisdiction

To invoke federal question jurisdiction, a plaintiff must assert claims "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Here, Defendants argue that the Court lacks federal question jurisdiction over Ms. Klaneski's claims because the federal statutes that she invokes—the FTCA and the criminal mail fraud and wire fraud statutes—do not provide for private rights of action. *See* Mem. at 16–17.

In response, Ms. Klaneski argues that these federal statutes create affirmative obligations that State Farm is required to observe. *See* Opp'n at 4. She emphasizes that "federal courts [have] a 'paramount' role in protecting federal rights," and argues that this role justifies exercising subject matter jurisdiction over the claims in this case. *See id.* at 4–5 (alteration in original) (quoting *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006)).

The Court agrees with Defendants, in part.

"A private individual may bring suit under a federal statute only when Congress specifically intended to create a private right of action." *Hill v. Didio*, 191 F. App'x 13, 14 (2d

---

[1] Page numbers refer to the ECF-generated page numbers rather than a document's internal page numbers.

Cir. 2006) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002); and *Alaji Salahuddin v. Alaji*, 232 F.3d 305, 308, 311–12 (2d Cir. 2000)).

Ms. Klaneski first asserts a claim under the FTCA, which prohibits "[u]nfair methods of competition" and "unfair or deceptive acts or practices." 15 U.S.C. § 45(a). Courts have consistently held, however, that "the provisions of the Federal Trade Commission Act may be enforced only by the Federal Trade Commission." *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974). "Nowhere does the Act bestow upon either competitors or consumers standing to enforce its provisions." *Id.* Thus, "no private right of action arises under that Act." *Naylor v. Case & McGrath, Inc.*, 585 F.2d 557, 561 (2d Cir. 1978).

Ms. Klaneski next asserts claims under the federal criminal mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343. "As a general matter, [the Second Circuit has] long recognized that crimes are prosecuted by the government, not by private parties." *Hill*, 191 F. App'x at 14–15 (citing *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86–87 (2d Cir. 1972)). Consequently, "no private right of action exists under criminal statutes absent an indication that Congress intended to create such a private right of action." *Nath v. Select Portfolio Servicing, Inc.*, 732 F. App'x 85, 87 (2d Cir. 2018) (citing *Cort v. Ash*, 422 U.S. 66, 79–80 (1975); and *Alaji Salahuddin*, 232 F.3d at 307–08). Applying this rule, the Second Circuit has held that the "federal criminal mail and wire fraud statutes," the precise statutes at issue in this case, do not create a private right of action. *See id.* (citing 18 U.S.C. §§ 1341, 1343).

Thus, Ms. Klaneski has not asserted a cognizable federal cause of action in her Complaint. Nonetheless, this conclusion does not compel the dismissal of her claim for lack of subject matter jurisdiction. "Determinations that a federal statute does not provide a private right of action are typically subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) . . . for

8

failure to state a claim." *Fair v. Verizon Commc'ns Inc.*, 621 F. App'x 52, 53 (2d Cir. 2015) (citing *Republic of Iraq v. ABB AG*, 768 F.3d 145, 171 (2d Cir. 2014); *Lopez v. Jet Blue Airways*, 662 F.3d 593, 597 (2d Cir. 2011); and *George v. N.Y.C. Dep't of City Plan.*, 436 F.3d 102, 103 (2d Cir. 2006)). *But see Cain v. U.S. Bank, Nat'l Ass'n*, No. 20-cv-05034 (AMD) (AYS), 2021 WL 3884196, at *3 (E.D.N.Y. Aug. 31, 2021) (noting that, notwithstanding the Second Circuit's statement in *Fair*, some district courts "have found that there is no federal question jurisdiction when a private party brings federal criminal claims for which there is no private right of action").

Accordingly, the Court will exercise subject matter jurisdiction over Ms. Klaneski's claims under the FTCA and the federal mail and wire fraud statutes and dismiss these counts under Rule 12(b)(6) for failure to state a claim.

With respect to Ms. Klaneski's state law claims, the Court may exercise subject matter jurisdiction and reach the merits of these claims if Ms. Klaneski has established that the Court has diversity jurisdiction over this action or if the Court decides to exercise supplemental jurisdiction over the state law claims. These issues are addressed below.

### B.  Diversity Jurisdiction

District courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a).

#### 1.  Misjoinder

Section 1332 "requires 'complete diversity,' *i.e.* all plaintiffs must be citizens of states diverse from those of all defendants." *Penn. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014). Here, there is no dispute that both Ms. Klaneski and Mr.

Tierney are citizens of Connecticut. *See* Compl. at 1–2. Thus, the Court cannot exercise diversity jurisdiction over the action as currently constituted.

Recognizing this jurisdictional defect, Ms. Klaneski urges the Court to dismiss Mr. Tierney from this action, which would render the remaining parties completely diverse. *See* Opp'n at 5.

In response, Defendants argue that Mr. Tierney cannot be dismissed because he is an indispensable party in this action. *See* Reply at 3. They contend that Mr. Tierney's presence is necessary because his alleged conduct increased Farmington Auto Park's damages and because a separate lawsuit against him in state court would result in duplicative litigation and potentially inconsistent relief. *See id.* at 4.

The Court disagrees.

"Federal Rule of Civil Procedure 21 allows a court to drop a nondiverse party at any time to preserve diversity jurisdiction, provided the nondiverse party is not 'indispensable' under Rule 19(b)." *Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Publ'g Corp.*, 635 F.3d 48, 51 (2d Cir. 2011) (quoting *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009)).

"Rule 19(b) specifies four factors: (1) whether a judgment rendered in a person's absence might prejudice that person or parties to the action, (2) the extent to which any prejudice could be alleviated, (3) whether a judgment in the person's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the court dismissed the suit." *CP Solutions*, 553 F.3d at 159. When, as in this case, the plaintiff consents to the dismissal of the non-diverse defendant, "[t]he relevant question is whether the defendants will be prejudiced if [the non-diverse defendant] is dropped." *Id.* ("Whatever prejudice to [plaintiff] there might be, it

10

is prejudice the plaintiff is willing to bear and therefore should not have troubled the district court.").

Here, Defendants have not identified any reason why they would be prejudiced by Mr. Tierney's dismissal. The underlying basis for Ms. Klaneski's claims in this case is the Goras' insurance policy with State Farm, and Defendants have not identified any reason why Ms. Klaneski could not obtain an adequate remedy against State Farm alone. Mr. Tierney is merely alleged to be an agent or employee of State Farm and to have acted in the scope of this agency or employment in conducting the supplemental appraisal. *See* Compl. at 4. Even to the extent that Mr. Tierney might be jointly liable with State Farm for some claims, the Second Circuit has held that "Rule 19 does not mandate the joinder of joint obligors, because one of several joint obligors is not typically an indispensable party to an action against the others." *Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 312 F.3d 82, 87 (2d Cir. 2002).

The dismissal of Mr. Tierney could result in duplicative litigation if Ms. Klaneski brings a separate claim against Mr. Tierney in state court. *See* Reply at 4. "Rule 19(b), however, does not require that every factor support the district court's determination." *Universal Reinsurance*, 312 F.3d at 88–89. Ultimately, dismissing this case on the ground that Mr. Tierney is an indispensable party would not comport with "Rule 19(b)'s flexible standard." *CP Solutions*, 553 F.3d at 159; *see also Jaser v. N.Y. Prop. Ins. Underwriting Ass'n,* 815 F.2d 240, 242 (2d Cir. 1987) ("[A] court should take a flexible approach when deciding what parties need to be present for a just resolution of the suit.").

Accordingly, because Mr. Tierney is not an indispensable party, he could be dismissed from this action to satisfy § 1332(a)'s diversity requirement. But before dismissing Mr. Tierney

11

and exercising diversity jurisdiction over Ms. Klaneski's claims, the Court must first consider whether the Complaint satisfies § 1332(a)'s amount in controversy requirement.

### 2. The Amount in Controversy Requirement

"A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 784 (2d Cir. 1994)). In conducting this inquiry, courts in the Second Circuit apply "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Id.* (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)). If, however, "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed . . . , the suit will be dismissed." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

Ms. Klaneski asserts in her Complaint that she is entitled to $7,673.37 in compensatory damages. Compl. at 16. She argues, however, that punitive damages under CUTPA could make up the difference required to meet the $75,000 amount in controversy threshold. *See* Mem. at 6. Ms. Klaneski emphasizes the low burden for pleading damages under the "legal certainty" test and notes that Connecticut courts have awarded substantial sums as punitive damages under CUTPA in other cases. *See id.* at 6–10.

In response, Defendants argues that punitive damages could not satisfy the amount in controversy requirement because Ms. Klaneski's CUTPA claim fails as a matter of law. *See* Reply at 6. The insurer further argues that, even if Ms. Klaneski has plausibly alleged a CUTPA claim, she has not asserted a legal basis for awarding punitive damages under that statute. *See id.*

12

The Court agrees.

"Where both actual and punitive damages are recoverable under a complaint[,] each must be considered to the extent claimed in determining jurisdictional amount." *Bell v. Preferred Life Assurance Soc'y of Montgomery*, 320 U.S. 238, 240 (1943). "Punitive damages available under state law can help a plaintiff meet the jurisdictional requirement even where they make up the bulk of the amount in controversy." *Peoples Club of Nigeria Int'l, Inc. v. Peoples Club of Nigeria Int'l – N.Y. Branch, Inc.*, 821 F. App'x 32, 35 (2d Cir. 2020) (citing *Bell*, 320 U.S. at 240). Nonetheless, a court "is plainly not compelled to accept a claim of punitive damages, however unwarranted, made for the purpose of conferring federal jurisdiction." *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1034 n.1 (2d Cir. 1972), *aff'd*, 414 U.S. 291 (1973). "Indeed, in computing jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages." *Id.*

Thus, Ms. Klaneski can rely on her punitive damages claim to meet the $75,000 amount in controversy threshold. The Court must, however, apply greater scrutiny to this claim than to the $7,673.37 that Ms. Klaneski claims in compensatory damages.

In order to establish that a business practice violates CUTPA, the plaintiff must show that "the practice, 'without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise.'" *State v. Acordia, Inc.*, 310 Conn. 1, 37 (2013) (quoting *McLaughlin Ford, Inc. v. Ford Motor Co.*, 192 Conn. 558, 568 (1984)). And because the Connecticut Unfair Insurance Practices Act "provides the exclusive and comprehensive source of public policy with respect to general insurance practices, . . . unless an insurance related practice violates CUIPA or, arguably, some other statute

regulating a specific type of insurance related conduct, it cannot be found to violate any public policy and, therefore, it cannot be found to violate CUTPA." *Id.*

In her CUIPA claim, Ms. Klaneski asserts that State Farm engaged in unfair claim settlement practices under Connecticut General Statutes section 38a-816(6). *See* Compl. ¶¶ 47–51. This provision requires that such practices be committed or performed "with such frequency as to indicate a general business practice." Conn. Gen. Stat. § 38a-816(6). The Connecticut Supreme Court has concluded that this language "reflects the legislative determination that isolated instances of unfair insurance settlement practices are not so violative of the public policy of this state as to warrant statutory intervention." *Mead v. Burns*, 199 Conn. 651, 666 (1986). Thus, CUIPA claims "require a showing of more than a single act of insurance misconduct." *Id.* at 659.

Furthermore, a plaintiff may obtain punitive damages under CUTPA only if the evidence reveals "a reckless indifference to the rights of others or an intentional and wanton violation of those rights." *Ulbrich v. Groth*, 310 Conn. 375, 446 (2013) (internal quotation marks omitted). "In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence." *Id.*

Ms. Klaneski does not specifically assert that the wrongful acts alleged here occur "with such frequency as to indicate a general business practice." Conn. Gen. Stat. § 38a-816(6). Instead, she rests on her allegation that "[d]ue to the behemoth size of the Defendant's insurance business spanning many different states, and the number of claims that must be processed in order to total an annual revenue of billions of dollars, . . . denying payment in full of claims such as the one at the heart of this matter cannot be a sole such incident." Compl. ¶ 52. Without providing any further factual amplification, she merely "avers this to be an ongoing business

practice of the Defendant State Farm, and is not an isolated incident pertaining to the assignor." *Id.*

Courts in this District have consistently dismissed CUIPA claims that rely on the type of generalized allegations presented here. One court granted a motion to dismiss because the plaintiffs relied on the bare allegation that "it is the general business practice of State Farm to wrongfully deny coverage by relying upon inapplicable policy exclusions" and otherwise failed "to allege any pattern of wrongful conduct, either with respect to their claim or those of others." *Kim v. State Farm Fire & Cas. Co.*, No. 3:15-cv-879 (VLB), 2015 WL 6675532, at *4–5 (D. Conn. Oct. 30, 2015). Another court dismissed a CUIPA claim that relied on the plaintiffs' own individual complaints along with "the allegations contained in six enumerated lawsuits," holding that "the plaintiffs cannot merely rely on the fact that others have made allegations against State Farm and/or its affiliates, as opposed to including their own factual allegations, for which they have a good faith basis, in the Complaint." *Phillips v. State Farm Fire & Cas. Co.*, No. 3:19-cv-623 (AWT), 2020 WL 3105485, at *4 (D. Conn. Feb. 28, 2020) (internal quotation marks omitted). In fact, "prior instances of insurance misconduct offered to demonstrate a general business practice" must be not only specifically alleged but must also be "sufficiently similar to the allegations at issue to support" the conclusion of a general business practice. *New England Sys., Inc. v. Citizens Ins. Co. of Am.*, No. 3:20-cv-01743 (JAM), 2021 WL 1978691, at *4 (D. Conn. May 17, 2021) (citing *Mazzarella v. Amica Mut. Ins. Co.*, 774 F. App'x 14, 18 (2d Cir. 2019)). Thus, the generalized allegations that Ms. Klaneski presents here do not satisfy the standard for pleading a CUIPA/CUTPA claim.[2]

---

[2] Connecticut Superior Courts have divided over the question of whether a bare allegation of a general business practice devoid of factual support is sufficient at the pleading stage under state law. *Compare Prucker v. Am. Econ. Ins. Co.*, No. CV-18-6013630-S, 2019 WL 2880369, at *6 (Conn. Super. Ct. May 31, 2019) (noting "the absence of

Likewise, under the "closer scrutiny" that courts apply to claims for punitive damages, such bare allegations are insufficient to satisfy the amount in controversy requirement. *See Zahn*, 469 F.2d at 1034 n.1 ("[T]he trial court is plainly not compelled to accept a claim of punitive damages, however, unwarranted, made for the purpose of conferring federal jurisdiction."). The Second Circuit addressed a similar case in *Pang v. Allstate Ins. Co.*, 173 F.3d 845 (2d Cir. 1999) (unpublished table decision), where the plaintiff sought to satisfy the amount in controversy requirement by asserting a claim for punitive damages against an insurer for allegedly engaging in unfair claim settlement practices under New York law. The court concluded that the plaintiff's "conclusory allegation that 'the fraudulent way defendant [handled] the present claim is indicative of a general practice' is insufficient to show that the governing substantive law would permit him to recover punitive damages and survive Allstate's motion to dismiss."[3] *Id.* at *1. Here, as in *Pang*, Ms. Klaneski offers only conclusory allegations of a general business practice that would not survive a motion to dismiss and cannot support "a good faith claim for punitive damages." *Id.*

---

appellate authority on the subject" and siding with cases holding that "more than just a conclusory allegation of a general business practice is required to state a cause of action for unfair claims settlement practices"), *with Venegas v. Horace Mann Ins. Co.*, No. NNH-CV-16-6061980, 2017 WL 2453115, at *3 (Conn. Super. Ct. May 9, 2017) (agreeing with "the line of cases holding that it is unnecessary to plead specific instances of 'other' wrongdoing in support of an allegation of a general business practice"). The cases adopting the more lenient view have been distinguished by courts in this District on the ground that they "applied the Connecticut pleading standard, rather than the standard announced in *Iqbal* and *Twombly*, which requires more than the bare conclusory allegations accepted by the state court." *Kim*, 2015 WL 6675532, at *6 (internal quotation marks omitted). Even to the extent that Ms. Klaneski's CUIPA/CUTPA claim might survive a motion to strike in Connecticut state court, her allegations cannot support a "good faith representation" that the amount in controversy exceeds $75,000, particularly under the "closer scrutiny" applied to punitive damages claims. *See Zahn*, 469 F.2d at 1034 n.1 ("[I]n computing jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages.").

[3] Connecticut law requires "wanton and malicious injury, evil motive and violence" to award punitive damages, *Ulbrich*, 310 Conn. at 446, while New York law similarly requires "a fraud evincing a high degree of moral turpitude and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations," *Pang*, 173 F.3d 845, at *1 (quoting *Rocanova v. Equitable Life Assurance Soc'y*, 634 N.E.2d 940, 943 (N.Y. 1994)). And as Connecticut law requires evidence of a "general business practice" to establish a CUIPA violation, Conn. Gen. Stat. § 38a-816(6), New York law permits punitive damages only when the wrong is "aimed at the public generally," *i.e.*, "part of a pattern of similar, publicly directed misconduct," *Rocanova*, 634 N.E.2d at 943–44.

Accordingly, because Ms. Klaneski's claim for punitive damages under CUTPA cannot be used to satisfy the amount in controversy, Ms. Klaneski has not met her burden to establish diversity jurisdiction over this action.

### C. Supplemental Jurisdiction

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim," however, if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).

The exercise of supplemental or pendant jurisdiction is a matter of discretion, not of right. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* But as the Second Circuit recently emphasized, "[t]he principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction 'in the usual case' clearly does not mean that the balance of the factors always points that way." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018). Thus, "[w]hen § 1367(c)(3) applies, the district court must still meaningfully balance the

supplemental jurisdiction factors" of judicial economy, convenience, fairness, and comity before declining to exercise supplemental jurisdiction. *Id.*

As discussed above, the Court will exercise jurisdiction over Ms. Klaneski's federal claims but will dismiss these claims under Rule 12(b)(6). The Court also may not exercise diversity jurisdiction over Ms. Klaneski's remaining state law claims. Thus, the Court "has dismissed all claims over which it has original jurisdiction," and it must decide whether to "decline to exercise supplemental jurisdiction" over Ms. Klaneski's state law claims. 28 U.S.C. § 1367(c).

Here, after balancing the factors set forth in *Gibbs* and *Cohill*, the Court will decline to retain supplemental jurisdiction. When, "as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures v. Bd. of Trade of N.Y.C.*, 464 F.3d 255, 262 (2d Cir. 2006). Ms. Klaneski's remaining claims—breach of contract, breach of the covenant of good faith and fair dealing, quantum meruit, promissory estoppel, unjust enrichment, negligence, tortious interference with business expectations, and violations of CUIPA, CUTPA, and state insurance regulations—raise quintessential questions of state law, and dismissal "will procure for the parties 'a surer-footed reading of applicable law'" with respect to these claims. *Id.* at 263 n.5 (quoting *Gibbs*, 383 U.S. at 726). Finally, as in *Klein & Co.*, the substantial number of remaining claims favors dismissal. *See id.* (emphasizing that "the *eight* remaining state law claims" would be more properly considered in state court).

Accordingly, the Court will not exercise supplemental jurisdiction over Ms. Klaneski's remaining state law claims, and these claims will be dismissed without prejudice to re-filing in state court.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.

Ms. Klaneski's claims under federal law are **DISMISSED with prejudice** for failure to state a claim.

Because the federal claims are dismissed and the Court does not have diversity jurisdiction over this action, the Court declines to exercise supplemental jurisdiction over Ms. Klaneski's state law claims. These claims are **DISMISSED without prejudice** to refiling in state court.

If Ms. Klaneski believes that the jurisdictional defects identified in this Ruling and Order can be cured, she must seek leave to file an Amended Complaint by **August 4, 2023**, or this action will be dismissed with prejudice.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of June, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE